# EXHIBIT S

UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

**NEWELL RUBBERMAID, INC.,**

**Case No. 1:15-cv-00597-RJJ**
**Judge Robert J. Jonker**

**Plaintiff/Counter-Defendant,**

**v.**

**KIRSCH LOFTS, LLC,**

**Defendants/Counter-Plaintiffs.**

**DEFENDANT'S EXPERT REPORT**

**Arthur H. Siegal**

**I.       CURRICULUM VITAE**

*See* attached Exhibit A.

**II.      PUBLICATIONS**

See attached Exhibit B

**III.     CASES TESTIFIED (DEPOSITION OR TRIAL – LAST FIVE YEARS)**

*Franklin Z Adell Trust UAD July 17, 2012 v Adell Broadcasting Corporation STN.Com and Birmingham Properties*, Oakland County Circuit Court, Case No. 10-114792-CZ

**IV.     COMPENSATION**

My compensation to act as an expert witness, including the preparation of this report and testimony at deposition and/or trial, is at a rate of $410.00 per hour plus out-of-pocket expenses.

JAFFE RAITT HEUER & WEISS, P.C.

## V.    FACTS

What follows is the information upon which I have formed my opinion.  I have no independent knowledge of the accuracy of the information, but have assumed that the documents and information provided by Scott T. Bosgraaf on behalf of Kirsch Lofts LLC regarding the facts are accurate.  I have assumed that:

a. In 2008, Kirsch Lofts obtained approval of a Brownfield Plan by the City of Sturgis Brownfield Redevelopment Authority (BRA), the Michigan Department of Environmental Quality and the Michigan Strategic Fund and/or the Michigan Economic Growth Authority Board.  The Plan is attached as Exhibit C.

b. Kirsch Lofts entered into a Brownfield Reimbursement Agreement with the BRA on or about September 24, 2008.  The Brownfield Reimbursement Agreement is attached as Exhibit D.

c. In 2008, Kirsch Lofts submitted a Brownfield Redevelopment Credit Pre-approval Application to the Michigan Economic Development Corporation (MEDC).  A portion of the Application is attached as Exhibit E.

d. On October 10, 2008, the MEDC granted a pre-approval of the Application.   A copy of the pre-approval is attached as Exhibit F.

e. At some point prior to July 31, 2010, Kirsch Lofts requested a commitment from CapFund New Markets, LLC of an allocation of Federal New Market Tax Credits which was approved.  The approval is attached as Exhibit G.

f. All of the above documents relate to the property located at 308 N. Prospect Street in Sturgis Michigan (the Property).

g. Kirsch Lofts purchased the Property in 2009 and was capable of conducting the intended redevelopment of the Property and prevented from redeveloping the Property by Newell Rubbermaid, Inc. (Newell) because of contamination of the Property for which Newell was liable under MCL 324.20126.

h. The proposed redevelopment of the Property will not be completed by October 10, 2018 because of the time necessary to conduct remediation sufficient to permit the intended redevelopment of the Property and the time necessary to conduct the redevelopment work.

i. The earliest date I expect the first phase of the project to be completed is September 9, 2019, although completion by that date is, according to Kirsch Lofts, unlikely based

on the current status of Newell's remediation efforts.  Based on Kirsch Lofts' earlier development timeline, the earliest I expected the entire project to be completed is September 9, 2022, although, again, given the current status of Newell's remediation efforts, that seems highly unlikely.

j.  Kirsch Lofts had in 2010-2012 and has now the financial wherewithal to conduct the intended redevelopment work at the Property.

## VI.    STATEMENT OF OPINIONS

I have been asked to opine on the incentives approved for the redevelopment of the Property, their approved value, their current condition and their current value. My conclusion is that the delay in the completion of the project has resulted in a loss in value to Kirsch Lofts of at least $5,996,108 as described below.

### 1.   Brownfield MBT Credit

**Conclusion:  The Credit Pre-Approval would have been worth at least $1,521,000 to Kirsch Lofts and that entire amount has been lost as a result of the delay in conducting the redevelopment work at the Property.**

**Analysis:** The Brownfield MBT Credit program allows developers to apply for a credit against the former Michigan Business Tax calculated based on a percentage of the cost of certain eligible investments in a project (including demolition, construction, restoration, alteration, renovation, or improvement of buildings or site improvements on eligible property and the addition of machinery, equipment, and fixtures to eligible property) and upon completion of the project, a credit would be issued to the developer based on the amount expended as an eligible investment. MCL 208.1437(29)(d).

Thus, if approved, a brownfield MBT credit would allow a developer to reduce its tax burden, effectively reducing its cost of development.  The Michigan Business Tax has since been replaced by the Michigan Corporate Income Tax. There are still some businesses paying the MBT, and so, there would be, and have been in prior years, a market of businesses willing to

JAFFE RAITT HEUER & WEISS, P.C.

purchase these Brownfield MBT Credits at a discount, typically at a price of between 90 and 95 cents on the dollar. Reportedly, the State of Michigan will also redeem these Credits due to the change from the MBT to the corporate income tax at the same rate.

The October 10, 2008 MEDC letter to Kirsch Lofts, Exhibit F, entitled Kirsch Lofts to claim a Brownfield MBT Credit of at most $1,690,000. This figure was set in the MEDC Pre-approval letter based on 20% of an anticipated total investment eligible for credit under MCL 208.1437. As stated in the MEDC letter, in order to qualify for the credit, "the project must be completed not more than ten (10) years from the date of this letter." This is consistent with, and required by MCL 208.1437(1). Note that this 10 year period may not be extended. MCL 208.1437(9). Completion is defined in the MEDC letter as completion of the project as described in the pre-approval application and receipt of a Certificate of Occupancy. This is consistent with MCL 208.1437(10). The application, Exhibit E, described the redevelopment project as a three phase project expected to incur eligible investments totaling $8,450,000 over the three phases.

Eligible investment is defined as "any demolition, construction, restoration, alteration, renovation, or improvement of buildings or site improvements on eligible property and the addition of machinery, equipment, and fixtures to eligible property after the date that eligible activities on that eligible property have started pursuant to a brownfield plan ... if the costs of the eligible investment are not otherwise reimbursed to the taxpayer...." MCL 208.1437(32) (d).

Therefore, assuming that Kirsch Lofts spent at least the $8,450,000 on eligible expenses, and assuming that Kirsch Lofts intended to sell the MBT Credits rather than using them itself, the Credit would have had a value of roughly $1,521,000 on the market (using the conservative 90% discount factor).

Therefore, assuming that Kirsch Lofts could complete the project in full by October 10, 2018, at a cost of at least $8,450,000 for restoration, alteration, renovation and improvement of the buildings, the MBT Credit should be worth at least $1,521,000.  However, it appears that the full project may not be completed by October 10, 2018.

If one or more phases of the project could be completed in full before October 10, 2018, Kirsch Lofts could technically claim or sell a pro-rated credit but, pursuant to the statute, if all components of a multiphase project are not completed by 10 years of the issue date of the pre-approval letter, then the qualified taxpayer, in this instance, Kirsch Lofts would be required to "pay to the state treasurer, as a penalty, an amount equal to the sum of all credits claimed and assigned for all components of the multiphase project and no credits based on that multiphase project shall be claimed after that date by the qualified taxpayer or any assignee of the qualified taxpayer." The penalty would also be subject to interest on the amount of the credit claimed or assigned at the rate set pursuant to MCL 205.23(2), beginning on the date that the credit for that component was claimed or assigned. In short, Kirsch Lofts would be obligated to pay to the State the amount of any credit actually claimed plus interest, meaning that KirschLofts would actually lose money. The value of the preapproval has been reduced to zero.

### 2.  Brownfield Tax Increment Financing

**Conclusion:  The value of the Brownfield TIF has been reduced by at least $1,737,308 from $3,153,735 in reimbursements through 2037 to, at most $1,416,427.  This value will continue to decline if project completion is delayed beyond September of 2019.**

**Analysis:** The Brownfield Redevelopment Financing Act, 1996 PA 381,  MCL 125.2651, et seq (Act 381) allows communities to capture the increase in property taxes generated by a development over and above the taxes generated prior to development and use them to reimburse qualified property developers for expenses of certain eligible activities including plan

JAFFE RAITT HEUER & WEISS, P.C.

preparation, baseline environmental assessment preparation, "due care activities, and response activities.  For communities, like Sturgis, that fall on a list of qualifying communities, Exhibit H, demolition, lead and asbestos abatement, site preparation work and public infrastructure are also eligible for reimbursement. MCL 125.2651(n).  Thus, if approved, a brownfield TIF results in a series of payments directly to the developer, effectively reducing its cost of development.

The Brownfield Plan and Reimbursement Agreement make clear that, pursuant to Act 381, Kirsch Lofts was entitled to reimbursement of up to $1,823,250 in expenses of eligible activities plus simple interest at a rate of 6%.  Exhibits C and D.

Based on the approved Brownfield Plan, had the project begun in 2009 as anticipated, Kirsch Lofts could have expected to be reimbursed a total of $3,272,715 from 2010 until 2037 and Kirsch Lofts' calculation of expected taxes captured (which were validated by the City and its assessor) would have been sufficient to make those payments.  However, pursuant to MCL 125.2663(22), the duration of the tax capture cannot last longer than 30 years from the beginning date of the capture of tax increment revenues for the eligible property and the beginning date for capture may not be later than 5 years after the date of the resolution including the eligible property in the brownfield plan.  Therefore, the period of capture must have begun (even though there was no tax increment to capture) on or about September 9, 2013.  Assuming that the project is not completed until September 9, 2019, and assuming that the tax increment generation predicted in the Brownfield Plan would occur on the schedule that Plan predicted only deferred by 6 years, the amount of capture would be reduced because the tax increment capture would occur from 2014 until 2037 – 24 years instead of 30 and there would be negligible capture from 2014 until 2019, meaning effectively only 19 years of capture.

Given the passage of time and assuming that the project is completed on or about September 9, 2019, Kirsch Lofts is expected to receive the following reimbursements assuming that the assessment and taxes follow the pattern outlined in the Brownfield Plan:

| Year | Payments from Local Tax Capture | Payments from School Tax Capture | Annual Total |
|------|--------------------------------|----------------------------------|--------------|
| 2020 | $ - | $ - | $ - |
| 2021 | 14 | 50 | 64 |
| 2022 | 41 | 25,672 | 25,713 |
| 2023 | 56 | 26,235 | 26,291 |
| 2024 | 71 | 26,809 | 26,880 |
| 2025 | 85 | 27,395 | 27,480 |
| 2026 | 101 | 27,992 | 28,093 |
| 2027 | 22,732 | 28,602 | 51,334 |
| 2028 | 27,814 | 29,223 | 57,037 |
| 2029 | 33,090 | 29,857 | 62,947 |
| 2030 | 85,054 | 44,002 | 129,056 |
| 2031 | 86,805 | 44,931 | 131,736 |
| 2032 | 88,592 | 45,879 | 134,471 |
| 2033 | 90,414 | 46,846 | 137,260 |
| 2034 | 92,272 | 47,833 | 140,105 |
| 2035 | 94,168 | 48,839 | 143,007 |
| 2036 | 96,102 | 49,865 | 145,967 |
| 2037 | 98,074 | 50,912 | 148,986 |
| Total | $ 815,485 | $ 600,942 | $ 1,416,427 |

Consequently, the value of the Brownfield TIF has been reduced to, at most $1,416,427 in reimbursements compared with $3,153,735. The value of the Brownfield TIF will continue to decline if the completion of the first phase of the project is delayed beyond September 9, 2019. For example, if completion of the project is delayed until September 9, 2022, it is estimated that the value of the Brownfield TIF would decline by an additional $437,960.

### 4. New Market Tax Credits

**Conclusion:  The Credit Pre-Approval would have been worth at least $2,737,800 to Kirsch Lofts and that entire amount has been lost as a result of the delay in conducting the redevelopment work at the Property.**

**Analysis:** Created in 2000, the New Markets Tax Credit (NMTC) program serves as a vehicle to attract investment capital into low-income neighborhoods that have been left behind by the traditional private marketplace. The Treasury Department administers the program through its Community Development Financial Institution Fund (CDFI Fund).  The NMTC Program is a fairly complicated program which involves entities. The CDFI Fund allocates tax credit authority to Community Development Entities (CDEs) through a competitive application process. Once that occurs, CDEs offer tax credits to investors in exchange for equity in the CDE. Using the capital from these equity investments, CDEs can make loans and investments to businesses operating in low-income communities on better rates and terms and more flexible features than the market.  In return, investors receive a 39% tax credit based on the amount of the investment over 7 years.

In this instance, CapFund New Markets, LLC, acting as a CDE committed to fund $10.8 Million to the project net of certain fees.  Kirsch Lofts anticipated making its investment through the CDE, which would enable it to obtain a credit of 39% over the first seven years of the project. Kirsch Lofts anticipated "selling" the credit stream to an investor in order to realize the value of the credit. Due to the seven year credit period, the expectation would be that the credit would be discounted by 35%. Kirsch Lofts would still retain its investment in the CDE which would retain its investment in the project.

As indicated in the letter, this commitment was only valid through July 31, 2010 and based on the fact that the project was stalled as of June of, 2010, it is my understanding that CapFund terminated their commitment and the $10.8 Million in funding was withdrawn.

The value of the credit lost would be 39% of the $10.8 Million or $4,212,000 multiplied by 65% for a total value lost of $2,737,800 (not counting transactional costs). Obviously, if the credit could be liquidated with a lesser discount, that would have resulted in a greater value lost.

**Conclusion**

Therefore, in total, I conclude that the delay has resulted in the loss to Kirsch Lofts of at least $5,996,108 calculated as $1,521,000 (due to the loss of the Brownfield MBT Credit) + $1,737,308 (due to the loss of at least 6 years of the Brownfield TIF and likely continuing to grow) +$2,737,800 (due to the loss of the New Market Tax Credit Financing). These are quantifiable income streams that are no longer available to Kirsch Lofts due to the delays involved and would have reduced Kirsch Lofts' costs to develop, reducing the risks inherent in the development process and improving chances of success as each of those programs is designed to do.

This analysis does not include: (1) interest on an MDEQ loan or the interest free loss of use of MDEQ loaned funds totaling roughly $700,000 for five years; (2) transactional costs that will be likely higher due to the passage of time; (3) increased costs of construction; (4) the time value of money (except where certain streams are assumed to be factored such as the MBT and NMTC credits); (5) Kirsch Lofts' carrying costs during the period of delay or any other factors not discussed above.

Arthur H. Siegal

# EXHIBIT A

**Contact Information**
Arthur H. Siegal
Jaffe Raitt Heuer & Weiss
27777 Franklin Rd., Suite 2500
Southfield, Michigan 48034 Oakland County

**Phone:** (248) 727-1452
**Fax:** (248) 351-3082
**Email:** asiegal@jaffelaw.com
**Website:** http://www.jaffelaw.com

**Education:**

The University of Michigan Law School, Ann Arbor, Michigan, United States of America, 1986 J.D.
Honors: cum laude

Wayne State University, Detroit, Michigan, United States of America, 1983 B.S.
Honors: With Distinction Major: Finance

**Admitted:**

Michigan, 1986

U.S. District Court Eastern District of Michigan, 1986

U.S. District Court Western District of Michigan

**Honors:**

Best Lawyers in America, 2016

Chrysler Environmental Leadership Award Certificate of Participation, 2005

Mack Alive Partnership Award for Pro Bono Services, 2002

Michigan Super Lawyer, 2006 - 2008

Michigan Waste Industries Association Certificate of Recognition, 1994

Dbusiness Top Lawyer, 2009, 2012, 2014 - 2015

**Past Positions:**

Honigman, Miller, Schwartz & Cohn, 1986 – 1993

**Affiliations:**

ASTM (formerly the American Society for Testing and Materials) ASTM, Member

American Bar Association, Administrative Law Section, Member

American Bar Association, Member, Waste and Resource Recovery Committee

Detroit Bar Association, Member

Detroit Regional Chamber of Commerce, Leadership Detroit Class XXV

Detroit Regional Chamber of Commerce, Member,

Environmental Quality Committee Michigan Chamber Environmental Quality Committee, Member: Chair, 2008 - 2010

Michigan Region BBYO, Commission Chair, 2008 - 2010

National Brownfield Association, Member

Oakland County Bar Association, Environmental Law Section, Member

The State Bar of Michigan, Environmental Law Section, Member, Wetland Committee, Solid & Hazardous Waste Superfund Committees

**Fraternities/Sororities:** Beta Gamma Sigma

**Areas of Practice:** Environmental Law Litigation

# EXHIBIT B

1879784.v1

**Published Works:**

"A brownfield strategy that works", Michigan Business Sites, 2003

"Attorney: Don't be lulled by first impressions", Michigan Real Estate Journal, 2002

"Drafting Commercial Leases", Environmental Law chapter of the ICLE treatise

"Dry Cleaning Issues: Prevention, Remediation and Litigation", Shopping Center Business, 2006

"Economic criteria may now apply to brownfields", Michigan Real Estate Journal, 2003

"End-of-Life Decisions (For Your Computer Equipment)", Michigan Business Law Journal, 2006

"Environmental Considerations in the Acquisition of Real Estate", Ann Arbor Area Business Monthly, 2005

"If the current system works, why dump it?", Crain's Detroit Business, 2002

"Impacts of QA/QC Consulting Services on Owner's Long Term Liability", 3rd Annual Waste Equipment & Recycling Conference, 1991

"It's Dirty Work: Solid Waste Legislation in Michigan", ABA Section of Environment, Energy Resources, Waste Management Committee Newsletter, 2004

"State e-mails are public record, shouldn't be clicked into oblivion", Detroit Free Press, 2002

"State's landfill rules protect public; new restrictions would make disposal expensive", The Detroit News, 2003
"Takings and Environmental Regulations", Laches, 1996

"The Rising Cost of Waste Disposal", Laches Oakland County Bar Association, 1992

Co-Author, "Vapor Intrusion - A New and Challenging Issue," co-authored by Arthur Siegal and Jeffrey Bolin, Michigan Defense Quarterly, 2013

"Waste Management: An Example of Accelerating Regulation", Laches, 1994

"Wetlands and Development", Laches, 1995

Author – Michigan Green Law Blog, www.michigangreenlaw.com

**Classes/Seminars Taught:**

Environmental Issues Affecting Real Estate, Michigan Institute of Continuing Legal Education, 1988

State of the Law Environmental Developments, Michigan Bar, Michigan Institute of Continuing Legal Education, 1991 – 1992

Great Lakes International Solid Waste Management Forum, Eng. Society of Detroit/Michigan Waste Industry Association, 1992

3rd Annual Waste Equipment and Recycling Conference, 1991

Environmental Audits, 39th Michigan Asphalt Paving Association Annual Conference, 1995

Solid Waste Rules, Michigan Waste Industries Association Annual Meeting, 1993

Update on the new MDNR, Oakland County Bar Association, Environmental Law Section, 1994

The New Act 641 Rules, Michigan Chamber of Commerce, Environmental Quality Committee, 1993

Impacts of QA/QC Consulting Services on an Owner's Long Term Liability, 3rd annual Waste Equipment & Recycling Conference, 1991

Panelist, The Great Waste Debate, Michigan Recycling Coalition

Presenter, Regarding Data Tracking at Annual Program, The Michigan Recycling Coalition, 1995

Panelist, Due Process Program, WDIV, 1996

Member, Steering Committee and Panelist, Southeast Michigan-Southwest Ontario Environmental Policy Summit, Greater Detroit Chamber of Commerce, 1997

Mold & Fungus Litigation, CLE International, September 29, 2003

Trans-Border Ordinance Issues, Solid Waste Association of North America Landfill Symposium and Trends & Challenges Conference, June 22, 2004

This constitutes the most current information Thomson Reuters Westlaw has on record for this listing. If you wish to update this information, please use the "Update Your Profile" link under Related Tools.

# EXHIBIT C

1879784.v1

# AMENDMENT TO BROWNFIELD PLAN

308 North Prospect Street,
City of Sturgis,
St. Joseph County, Michigan

August 19, 2008

*Final*

*SB*
*9/9/08*

## EQUITY RESOURCE



## ENVIRONMENTAL

A-5792 143rd Avenue, Suite A
Holland, Michigan 49423

# CITY OF STURGIS
# BROWNFIELD REDEVELOPMENT AUTHORITY


# BROWNFIELD PLAN
# FOR THE
# KIRSCH LOFTS, LLC REDEVELOPMENT PROJECT


Prepared by:

Equity Resource Environmental
A-5792 143rd Avenue, Suite A
Holland, MI 49423
Contact Person:  Jeff Balgoyen
Phone:  616-392-6010
Website:  www.erenvironmental.com
E-Mail:  jeffbere@sbcglobal.net

**Amendment to Brownfield Plan**                    Page 1 of 14
308 North Prospect Street, Sturgis, Michigan

## TABLE OF CONTENTS

**1.0 INTRODUCTION AND PURPOSE** ...................................................................................2

**DESCRIPTION OF THE PROJECT AND COSTS TO BE PAID THROUGH THE
BROWNFIELD PLAN (MCL 125.2663 (1)(A)**

**2.0 PROPERTY INFORMATION**..........................................................................................2
   Property Identification.......................................................................................................2
**3.0 PROPOSED REDEVELOPMENT**....................................................................................2
   Site Description and Building Construction.......................................................................2
   Site and Infrastructure Improvements ..............................................................................3
   Costs to be Paid through the Brownfield Plan...................................................................3

**4.0 ENVIRONMENTAL CONDITIONS** .................................................................................4
   Identification of Property as a "Facility".............................................................................4

**5.0 BROWNFIELD PLAN ELEMENTS**
  A.   Description of Costs to be Paid for with Tax Increment
       Revenues and Summary of Eligible Activities.........................................................4
  B.   Estimate of Captured Taxable Value and Tax Increment.........................................7
  C.   Method of Financing and Description of Advances by the Municipality...................7
  D.   Maximum Amount of Note or Bonded Indebtedness...............................................8
  E.   Duration of Brownfield Plan ................................................................................8
  F.   Estimated Impact of Tax Increment Financing on Revenues of Taxing
       Jurisdictions......................................................................................................8
  G.   Legal Description, Property Map, Statement of Quality Characteristics and
       Personal Property................................................................................................8
  H.   Estimates of Residents and Displacement of Families .............................................9
  I.   Plan for Relocation of Displaced Persons ..............................................................9
  J.   Provision for Relocation Costs .............................................................................9
  K.   Strategy for Compliance with Michigan's Relocation Assistance Law ....................10
  L.   Description of Proposed Use of Local Site Remediation Revolving Fund ...............10
  M.   Other Material that the Authority or Governing Body Considers Pertinent...............10

**EXHIBITS**
  A.   Legal Description of Eligible Property
  B.   Brownfield Eligible Cost Detail
  C.   Tax Capture Schedule


EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI  49423
Phone: 616-392-6010 • Fax:  616-392-6080 • Website:  crenvironmental.com

## 1.0   Introduction and Purpose

The City of Sturgis established the City of Sturgis Brownfield Redevelopment Authority (the "Authority") by resolution pursuant to the Brownfield Redevelopment Financing Act. (Public Act 381 of 1996, as amended, M.C.L. §125.2651 et seq., ("Act 381"). The resolution was filed with the Michigan Department of State, Office of the Great Seal.

The purpose of this plan, to be implemented by the City of Sturgis, is to satisfy the requirements for a Brownfield Plan as specified in Act 381.

The Authority proposes to implement this Brownfield Plan ("Plan") in an effort to promote economic development and redevelopment within the City of Sturgis

## 2.0   Property Information

### Property Identification

The proposed Kirsch Lofts, LLC Project (the "Project") is to be located at 308 North Prospect Street and 418 East Main Street (Tax Parcel #'s 052-200-024-00 & 052-250-028-00), City of Sturgis, St. Joseph County, Michigan (the "Subject Property"). The Subject Property is currently improved, with three (3) connected industrial buildings. The Subject Property is accessible from North Prospect Street to the east, East Hatch Street to the south, Main Street to the north, and also from 4th Street, which dead-ends into the west side of the Subject Property. Both the legal description of the Subject Property and a map showing the location of the parcels are attached as Exhibit A.

## 3.0   Proposed Redevelopment

### Site Description and Building Construction

This Project proposes the redevelopment of the Subject Property, including the renovation and rehabilitation of the unoccupied, functionally obsolete industrial buildings. The new use will be both residential and mixed retail/commercial use.



The Project will create new jobs and housing, will result in a long term increase in the City's tax base, and the redevelopment of this vacant un-aesthetically pleasing building. The initial anticipated private investment is approximately $6.5 million.

**Site and Infrastructure Improvements**

New infrastructure improvements will occur to the existing infrastructure, which will provide municipal water, sanitary sewer, and municipal storm water service to the new residential condominiums and mixed residential condos/commercial use on the Subject Property. All three (3) connected industrial buildings located on the Subject Property will utilize municipal water and sanitary sewer, exclusively. Municipal water and sanitary sewer will enter the Subject Property from North Prospect Street to the east. Natural gas utilities will be brought in from North Prospect Street to the east and distributed throughout the development. The developer intends to carry the installation of infrastructure throughout the Subject Property so as to service all three (3) connected industrial buildings.

**Costs to be paid through the Brownfield Plan**

The overall estimated investment for the Project will be approximately $6.5 million. Construction activities are anticipated to commence in the spring of 2009, with anticipated completion of Phase I in summer of 2010. Phases II and III will follow based on absorption and economic activities. This Plan has been created to facilitate the redevelopment of the Subject Property to allow the City of Sturgis Brownfield Redevelopment Authority to utilize Tax Increment Financing ("TIF") to reimburse the Developer for the Eligible Activities identified within this Plan, and to allow the Developer to apply for a Michigan Business Tax Credit ("MBT").

 EQUITY RESOURCE
ENVIRONMENTAL      A-5792 143rd Avenue • Suite A • Holland, MI 49423
Phone: 616-392-6010 • Fax: 616-392-6080 • Website: erenvironmental.com

308 North Prospect Street, Sturgis, Michigan

## 4.0    Environmental Conditions and Basis of Eligibility

### 4.1    Existing Environmental Conditions and Identification of Property as a "Facility"

Groundwater underlying the Subject Property contains concentrations of Trichloroethane and Tetrachloroethene exceeding applicable Part 201 Risk Based Criteria. (Additional Phase II investigation activities are currently being completed to determine the historical impact of the Kirsch Company manufacturing operations on the Subject Property. Any additional due care or response activity costs will be supplemented to this Plan Amendment.) Therefore, the Subject Property is an "Eligible Property" as defined by Act 381, because it has been determined to be a "facility" as defined by Part 201 of the NREPA as a result of the described contamination.

## 5.0    Brownfield Plan Elements

**A.  A description of costs intended to be paid for with tax increment revenues (MCLA 125.2663(1)(a)) and a brief summary of the Eligible Activities that are proposed for each Eligible Property. (MCLA 125.2663(1)(b))**

Kirsch Lofts, LLC is requesting that the City of Sturgis Brownfield Redevelopment Authority capture local taxes, school operating taxes, and state education tax millage for eligible activities at the Subject Property generated by the project to reimburse the cost of certain "Eligible Activities" as provided in this Plan, totaling $1,823,250. plus interest. A detailed list of these costs is attached as Exhibit B.

"Eligible Activities" are defined in Act 381 as meaning one or more of the following: (i) baseline environmental assessment activities; (ii) due care activities; and (iii) additional response activities. In addition, in qualified local governmental units such as the City of Sturgis, the Act includes the following additional activities under the definition of Eligible Activities: (A) infrastructure improvements that directly benefit eligible property; (B) demolition of structures that is not response activity under Part 201 of


EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI  49423
Phone: 616-392-6010 • Fax:  616-392-6080 • Website:  erenvironmental.com

NREPA; (C) lead or asbestos abatement; and (D) site preparation that is not response activity under Part 201 of NREPA. Table 1 below presents estimated costs of MDEQ and MEGA Eligible Activities which qualify for reimbursement from TIF.



| Table 1 –Eligible Activities | |
|---|---|
| Task | Cost Estimate |
| 1.  Phase I, Phase II, BEA activities | $   10,000 |
| 2.  Demolition, including Lead and Asbestos abatement | 1,500,000 |
| 3.  Due Care Compliance | 2,500 |
| 4.  Site Preparation | 25,000 |
| 5.  Public Infrastructure | 30,000 |
| 6.  Preparation and development of Brownfield Plan | 7,500 |
| 7.  MEGA and MDEQ work plan preparation | 10,000 |
| 8.  MEGA and MDEQ work plan review | 2,000 |
| 9. Interest | Amount unknown |
| 10. Contingency (15%) | 236,250 |
| TOTAL | **$ 1,823,250** |

The Eligible Activities estimated in Table 1 above include the following, plus interest at 6%:

1.      Initial Phase II identification of contamination of the Subject Property and ESAs associated with filing a Baseline Environmental Assessment with the Michigan Department of Environmental Quality.

2.      The existing, functionally obsolete industrial building will need to be internally demolished, including abatement of lead-based paints and asbestos-containing materials, prior to complete renovation.



3.      Activities will be required to prevent exacerbation of existing contamination, and to prevent others from coming into contact with the existing contamination.

4.      Site preparation activities will involve various earthwork, including grading and movement of soils.

5.      Infrastructure activities include streetscape improvements consisting of sidewalks, curb cuts, landscaping, etc.

6., 7., 8.   Costs will be incurred to prepare and develop this Brownfield Plan and required work plans for this Project as well as MDEQ and MEGA work plan review.

9.      Financing costs will be incurred relating to the eligible activities and interest expense at a rate of 6% per annum is requested.

10.     A 15% contingency factor is included to accommodate unexpected conditions during the course of this project.

**B. An estimate of the captured taxable value and tax increment revenues for each year of the Plan from each parcel of Eligible Property and in the aggregate. (MCLA 125.2663(1)(c))**

An estimate of the captured taxable value and tax increment revenues by year for real property is attached as Exhibit C.

**C. The method by which the costs of the Plan will be financed, including a description of any advances made or anticipated to be made for the costs of the Plan from the municipality. (MCLA 125.2663(1)(d))**



The costs of the Plan will be financed by Kirsch Lofts, LLC through loan financing for the development. Eligible Activities costs will be reimbursed through tax increments generated from the Subject Property.

**D. The maximum amount of the note or bonded indebtedness to be incurred, if any. (MCLA 125.2663(1)(e))**

The Authority does not anticipate incurring new bond indebtedness for this project.

**E. The duration of the Brownfield Plan, which shall not exceed the lesser of (1) the period required to pay for the Eligible Activities from tax increment revenues plus the period of capture authorized for the local site remediation revolving fund or (2) 35 years. (MCLA 125.2663(1)(f))**

The Subject Property will be subject to this Plan to the extent that all Eligible Activities undertaken in this Plan are repaid, but in no event will the Plan exceed the maximum duration provided for in (MCLA 125.2663(1)(f)).

**F. An estimate of the impact of tax increment financing on the revenues of all taxing jurisdictions in which the Eligible Property is located. (MCLA 125.2663(1)(g))**

Tabular estimates of the incremental tax increases are attached as Exhibit C.

**G. A legal description of each parcel of Eligible Property to which the Plan applies, a map showing the locations and dimensions of each Eligible Property, a statement of the characteristics that qualify the property as Eligible Property and a statement of whether personal property is included as part of the Eligible Property. (MCLA 125.2663(1)(h))**

    1.    Legal Description: See attached Exhibit A.

    2.    Location and Site maps: See Exhibit A.

EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI 49423
Phone: 616-392-6010 • Fax: 616-392-6080 • Website: erenvironmental.com

3. Characteristics of Subject Property: The "Eligible Property" was historically used for manufacturing, warehouse and storage for many years. The buildings consist of several interconnected structures, some constructed as early as 1922. The Subject Property is currently vacant/unoccupied. As a result of groundwater contamination from an adjoining parcel, the Subject Property is an MDEQ Part 201 "facility" as that term is defined in Section 20101 of NREPA.

4. Personal Property: New personal property placed in service at the Subject Property is included as part of the Eligible Property.

**H. An estimate of the number of persons residing on each Eligible Property to which the Plan applies, and the number of families and individuals to be displaced, if any. (MCLA 125.2663(1)(i))**

There are no person currently residing on the Subject Property; therefore, no individuals or families will be displaced.

**I. A plan for establishing priority for the relocation of persons displaced by implementation of the Plan, if applicable. (MCLA 125.2663(1)(j))**

This section is not applicable to this Project, as there are no persons residing on the Subject Property.

**J. Provision for the costs of relocating persons displaced by implementation of the Plan, and financial assistance and other reimbursement of expenses, if any. (MCLA 125.2663(1)(k))**


EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI  49423
Phone: 616-392-6010 • Fax:  616-392-6080 • Website:  erenvironmental.com

308 North Prospect Street, Sturgis, Michigan

This section is not applicable to this Project, as there are no persons residing on the Subject Property.

**K. A strategy for compliance with the Michigan Relocation Assistance Act, if applicable. (MCLA 125.2663(1)(l))**

This section is not applicable to this Project, as there are no persons residing on the Subject Property.

**L. A description of the proposed use of the local site remediation revolving fund. (MCLA 125.2663(1)(m))**

The local site remediation revolving fund will be used for purposes authorized under the Act.

**M. Other material that the authority or governing body considers pertinent. (MCLA 125.2663(1)(n))**

The Project involves the renovation and redevelopment of a functionally obsolete and contaminated manufacturing facility to create a newly renovated facility for housing and mixed use retail/commercial. The Project will create new jobs, will increase the city's tax base, and restore a vacant, unoccupied former industrial site to a new, productive use.

**Michigan Business Tax Credit**

It is the intention of the Michigan Legislature to encourage redevelopment of brownfields using the Michigan Business Tax Credit ("MBT Credit") permitted under Act 36, Public Acts of 2007, as amended (the "MBT Act"). The MBT Credit is based upon 12.5% to 20% of the "Eligible Investment" costs incurred at the Subject Property. "Eligible Investment" means demolition, construction, restoration, alteration, renovation,



308 North Prospect Street, Sturgis, Michigan

or improvement of buildings on Eligible Property, and the addition of machinery, equipment, and fixtures to the Subject Property. The Eligible Investment made by a qualified taxpayer after approval of this Brownfield Redevelopment Plan, but not earlier than 90 days prior to the date of the preapproval letter from the Michigan Economic Growth Authority, may be used to calculate the MBT Credit.

Kirsch Lofts, LLC intends to apply for an MBT Credit at the Eligible Property pursuant to the MBT Act.

EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI  49423
Phone: 616-392-6010 • Fax:  616-392-6080 • Website:  erenvironmental.com

## EXHIBIT A

### Subject Property Description

**Parcel #052-200-024-00**

BLK 55 EXCEPT W 131.33 FT LOT 9 & THAT PORTION OF 4TH T STREET VACATED N OF S LN LOT 15 BLK 6 ALSO LOTS 11,14,15,16, BLK 6. DRAKES 2ND. CITY OF STURGIS. THIS PARCEL BEING LOCATED WEST OF N. PROSPECT STREET. 30.5 FT TH SELY 30 FT M/L TO PT ON W LN OF 4TH ST 12 FT S OF POB TH N ALG W LN OF ST 12 FT TO POB. BEING A TRIANG PAR OUT OF NE COR LOT 15. DRAKES 2ND ADD. CITY OF STURGIS.

**Parcel #052-250-028-00**

LOTS 29 & 30 & 31 GREEN LAWN ADD. CITY OF STURGIS.



**EQUITY RESOURCE ENVIRONMENTAL**      A-5792 143rd Avenue • Suite A • Holland, MI 49423
Phone: 616-392-6010 • Fax: 616-392-6080 • Website: erenvironmental.com

308 North Prospect Street, Sturgis, Michigan

**EXHIBIT B**

**COST ESTIMATE SUMMARY**

| DESCRIPTION OF COSTS | ESTIMATED COST |
|---|---|
| **Pre-Brownfield Plan Amendment Environmental Activities**………………………………………………..………..**$** | **10,000** |
| **Demolition Activities** ……………………………………………**$ 1,500,000** | |
| **Due Care Compliance**…..  ………………………………………**$** | **2,500** |
| **Site Infrastructure**……………………………………………….**$** | **25,000** |
| **Site Preparation**……………………………………………………**$** | **30,000** |
| **Preparation and Development of Brownfield Plan** ..… ………………**$** | **7,500** |
| **MEGA Work Plan Preparation**………. ……………………………**$** | **10,000** |
| **MEGA Work Plan Review**………………………………………….**$** | **2,000** |
| **Interest**…………………. ………………………………………….**$** | **UNK** |
| **SUB TOTAL:** | **$1,587,000** |
| Contingency (15%): | $ 236,250 |
| Finance Costs (6%) | $    UNK |
| **GRAND TOTAL FOR ELIGIBLE ACTIVITIES:** | **$1,823,250** |

 EQUITY RESOURCE
ENVIRONMENTAL

A-5792 143rd Avenue • Suite A • Holland, MI  49423
Phone: 616-392-6010 • Fax:  616-392-6080 • Website:  erenvironmental.com

Case 1:15-cv-00597-RJJ   ECF No. 88-20,  PageID.2357   Filed 07/01/16   Page 32 of 58

308 North Prospect Street, Sturgis, Michigan

**EXHIBIT C**


**Tax Table**



Exhibit B
TIF Schedule

**AD VALOREM TAX - Real Property (Land, Residential and Commercial)**

| Year | New TV[2] | Increase in TV | County | City | Intermediate School | Comm. College, library, transport. | Total Local Capture | Cumulative Local Capture | State Education | School Operating | Total School Capture | Cumulative School Capture | Annual Tax Capture | Cumulative Tax Capture |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| Operating Mills[1] | | | 7.0414 | 10.0285 | 2.7823 | 4.1710 | 24.0232 | | 6.0000 | 17.6301 | 23.6301 | | 47.6533 | |
| Base TV: $104,800 | $104,800 | | | | | | | | | | | | | |
| 2008 | $104,800 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2009 | $106,896 | $2,096 | $4 | $6 | $2 | $2 | $14 | $14 | $13 | $37 | $50 | $50 | $63 | $63 |
| 2010 | $109,034 | $4,234 | $8 | $11 | $3 | $5 | $27 | $41 | $25 | $75 | $100 | $150 | $127 | $190 |
| 2011 | $3,111,215 | $3,006,415 | $12 | $17 | $5 | $7 | $41 | $82 | $6,518 | $19,154 | $25,672 | $25,822 | $25,714 | $25,904 |
| 2012 | $3,173,439 | $3,068,639 | $16 | $23 | $6 | $10 | $56 | $138 | $6,661 | $19,574 | $26,235 | $52,057 | $26,291 | $52,195 |
| 2013 | $3,236,908 | $3,132,108 | $21 | $29 | $8 | $12 | $71 | $209 | $6,807 | $20,002 | $26,809 | $78,866 | $26,880 | $79,075 |
| 2014 | $3,301,646 | $3,196,846 | $25 | $35 | $10 | $15 | $85 | $294 | $6,956 | $20,439 | $27,395 | $106,261 | $27,480 | $106,555 |
| 2015 | $3,367,679 | $3,262,879 | $30 | $42 | $12 | $17 | $101 | $395 | $7,108 | $20,885 | $27,992 | $134,253 | $28,093 | $134,648 |
| 2016 | $3,435,032 | $3,330,232 | $9,363 | $13,335 | $13 | $20 | $22,732 | $23,127 | $7,262 | $21,339 | $28,602 | $162,855 | $51,334 | $185,982 |
| 2017 | $3,503,733 | $3,398,933 | $11,458 | $16,318 | $15 | $23 | $27,814 | $50,941 | $7,420 | $21,803 | $29,223 | $192,078 | $57,037 | $243,020 |
| 2018 | $3,573,808 | $3,469,008 | $13,632 | $19,415 | $17 | $26 | $33,090 | $84,031 | $7,581 | $22,278 | $29,857 | $221,936 | $62,947 | $305,967 |
| 2019 | $3,645,284 | $3,540,484 | $24,930 | $35,506 | $9,851 | $14,767 | $85,054 | $169,085 | $21,243 | $22,759 | $44,002 | $265,938 | $129,055 | $435,022 |
| 2020 | $3,718,189 | $3,613,389 | $25,443 | $36,237 | $10,054 | $15,071 | $86,805 | $255,890 | $21,680 | $23,251 | $44,931 | $310,869 | $131,736 | $566,758 |
| 2021 | $3,792,553 | $3,687,753 | $25,987 | $36,983 | $10,260 | $15,382 | $88,592 | $344,481 | $22,127 | $23,753 | $45,879 | $356,748 | $134,471 | $701,229 |
| 2022 | $3,868,404 | $3,763,604 | $26,501 | $37,743 | $10,471 | $15,698 | $90,414 | $434,895 | $22,582 | $24,265 | $46,846 | $403,594 | $137,260 | $838,489 |
| 2023 | $3,945,772 | $3,840,972 | $27,046 | $38,519 | $10,687 | $16,021 | $92,272 | $527,168 | $23,046 | $24,787 | $47,833 | $451,427 | $140,105 | $978,595 |
| 2024 | $4,024,688 | $3,919,888 | $27,601 | $39,311 | $10,906 | $16,350 | $94,168 | $621,336 | $23,519 | $25,320 | $48,839 | $500,286 | $143,007 | $1,121,602 |
| 2025 | $4,105,182 | $4,000,382 | $28,168 | $40,116 | $11,130 | $16,686 | $96,102 | $717,438 | $24,000 | $25,863 | $49,865 | $550,132 | $145,987 | $1,267,569 |
| 2026 | $4,187,285 | $4,082,485 | $28,746 | $40,941 | $11,359 | $17,028 | $98,072 | $815,512 | $24,495 | $26,417 | $50,912 | $601,044 | $148,987 | $1,416,556 |
| 2027 | $4,271,031 | $4,166,231 | $29,338 | $41,781 | $11,592 | $17,377 | $100,086 | $915,598 | $24,997 | $26,983 | $51,980 | $653,024 | $152,068 | $1,568,622 |
| 2028 | $4,356,452 | $4,251,652 | $29,938 | $42,638 | $11,829 | $17,734 | $102,138 | $1,017,737 | $25,510 | $27,559 | $53,069 | $706,093 | $155,207 | $1,723,829 |
| 2029 | $4,443,581 | $4,338,781 | $30,561 | $43,511 | $12,072 | $18,097 | $104,231 | $1,121,968 | $26,033 | $28,147 | $54,180 | $760,273 | $158,411 | $1,882,241 |
| 2030 | $4,532,452 | $4,427,652 | $31,177 | $44,403 | $12,319 | $18,468 | $106,366 | $1,228,334 | $26,566 | $28,747 | $55,313 | $815,586 | $161,679 | $2,043,920 |
| 2031 | $4,623,101 | $4,518,301 | $31,815 | $45,312 | $12,571 | $18,846 | $108,544 | $1,336,878 | $27,110 | $29,359 | $56,469 | $872,055 | $165,013 | $2,208,933 |
| 2032 | $4,715,583 | $4,610,783 | $32,466 | $46,239 | $12,829 | $19,231 | $110,765 | $1,447,644 | $27,665 | $29,983 | $57,648 | $929,702 | $168,413 | $2,377,346 |
| 2033 | $4,809,875 | $4,705,075 | $33,130 | $47,185 | $13,091 | $19,625 | $113,031 | $1,560,675 | $28,230 | $30,620 | $58,850 | $988,553 | $171,881 | $2,549,227 |
| 2034 | $4,906,072 | $4,801,272 | $33,808 | $48,150 | $13,359 | $20,026 | $115,342 | $1,676,017 | $28,808 | $31,269 | $60,077 | $1,048,630 | $175,419 | $2,724,646 |
| 2035 | $5,004,193 | $4,899,393 | $34,499 | $49,134 | $13,632 | $20,435 | $117,699 | $1,793,716 | $29,386 | $31,832 | $61,328 | $1,109,957 | $179,027 | $2,903,673 |
| 2036 | $5,104,277 | $4,999,477 | $35,203 | $50,137 | $13,910 | $20,853 | $120,103 | $1,913,819 | $29,997 | $32,607 | $62,604 | $1,172,561 | $182,707 | $3,086,381 |
| 2037 | $5,206,363 | $5,101,563 | $35,922 | $51,161 | $14,194 | $21,279 | $122,556 | $2,036,375 | $30,809 | $33,286 | $63,906 | $1,238,487 | $186,481 | $3,272,842 |

[1] The tax levies are assumed to stay the same.

[2] Taxable value is based on planned improvements in 2010 ($6 million) and is increased 2% per year for inflation.

Assumes that 64% is homestead residential and 36% commercial

Assumes OPRA for 10 years on commercial portion and NEZ for 10 years on residential portion.

# Sturgis Project
## Reimbursement Schedule (with NEZ and OPRA)

| Year | Local Increment Captured | School Increment Captured | Annual Tax Increment Captured (1) | Cumulative Tax Increment Captured | Amout Due Developer (2) | Interest on Balance Due (6.0%) (3) | Payments to Developer From Local Tax Capture | Payments to Developer from School Tax Capture | Balance Due Developer (Principal) |
|---|---|---|---|---|---|---|---|---|---|
| 2008 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 | $0 |
| 2009 | $14 | $50 | $63 | $63 |  | $0 | $14 | $50 | $0 |
| 2010 | $27 | $100 | $127 | $190 |  | $0 | $27 | $50 | $0 |
| 2011 | $41 | $25,672 | $25,714 | $25,904 | $1,823,250 | $109,395 | $41 | $25,672 | $1,932,582 |
| 2012 | $56 | $26,235 | $26,291 | $52,195 | $1,932,582 | $115,955 | $56 | $26,235 | $2,022,823 |
| 2013 | $71 | $26,809 | $26,880 | $79,075 | $2,022,823 | $121,369 | $71 | $26,809 | $2,117,902 |
| 2014 | $85 | $27,395 | $27,480 | $106,555 | $2,117,902 | $127,074 | $85 | $27,395 | $2,218,096 |
| 2015 | $101 | $27,992 | $28,093 | $134,648 | $2,218,096 | $133,086 | $101 | $27,992 | $2,323,701 |
| 2016 | $22,732 | $28,602 | $51,334 | $185,982 | $2,323,701 | $138,422 | $22,732 | $28,602 | $2,435,030 |
| 2017 | $27,814 | $29,223 | $57,037 | $243,020 | $2,435,030 | $146,102 | $27,814 | $29,223 | $2,529,798 |
| 2018 | $33,090 | $29,857 | $62,947 | $305,967 | $2,529,798 | $151,788 | $33,090 | $29,857 | $2,624,549 |
| 2019 | $85,054 | $44,002 | $129,055 | $435,022 | $2,624,549 | $157,473 | $85,054 | $44,002 | $2,719,075 |
| 2020 | $86,805 | $44,931 | $131,736 | $566,758 | $2,719,075 | $163,144 | $86,805 | $44,931 | $2,753,164 |
| 2021 | $88,592 | $45,879 | $134,471 | $701,229 | $2,753,164 | $165,190 | $88,592 | $45,879 | $2,786,617 |
| 2022 | $90,414 | $46,846 | $137,260 | $838,489 | $2,786,617 | $167,797 | $90,414 | $46,846 | $2,819,343 |
| 2023 | $92,272 | $47,833 | $140,105 | $978,595 | $2,819,343 | $169,161 | $92,272 | $47,833 | $2,851,244 |
| 2024 | $94,168 | $48,839 | $143,007 | $1,121,602 | $2,851,244 | $171,075 | $94,168 | $48,839 | $2,882,213 |
| 2025 | $96,102 | $49,865 | $145,967 | $1,267,569 | $2,882,213 | $172,933 | $96,102 | $49,865 | $2,912,139 |
| 2026 | $98,074 | $50,912 | $148,987 | $1,416,556 | $2,912,139 | $174,728 | $98,074 | $50,912 | $2,940,900 |
| 2027 | $100,086 | $51,980 | $152,066 | $1,568,622 | $2,940,900 | $176,454 | $100,086 | $51,980 | $2,968,367 |
| 2028 | $102,138 | $53,069 | $155,207 | $1,723,829 | $2,968,367 | $178,102 | $102,138 | $53,069 | $2,994,403 |
| 2029 | $104,231 | $54,180 | $158,411 | $1,882,241 | $2,994,403 | $179,664 | $104,231 | $54,180 | $3,018,860 |
| 2030 | $106,366 | $55,313 | $161,679 | $2,043,920 | $3,018,860 | $181,132 | $106,366 | $55,313 | $3,041,580 |
| 2031 | $108,544 | $56,469 | $165,013 | $2,208,933 | $3,041,580 | $182,495 | $108,544 | $56,469 | $3,062,395 |
| 2032 | $110,765 | $57,648 | $168,413 | $2,377,346 | $3,062,395 | $183,744 | $110,765 | $57,648 | $3,081,126 |
| 2033 | $113,031 | $58,850 | $171,881 | $2,549,227 | $3,081,126 | $184,868 | $113,031 | $58,850 | $3,097,581 |
| 2034 | $115,342 | $60,077 | $175,419 | $2,724,646 | $3,097,581 | $185,865 | $115,342 | $60,077 | $3,111,554 |
| 2035 | $117,699 | $61,328 | $179,027 | $2,903,673 | $3,111,554 | $186,693 | $117,699 | $61,328 | $3,122,829 |
| 2036 | $120,103 | $62,604 | $182,707 | $3,086,381 | $3,122,829 | $187,370 | $120,103 | $62,604 | $3,131,171 |
| 2037 | $122,556 | $63,906 | $186,461 | $3,272,842 | $3,131,171 | $203,862 | $122,556 | $63,906 | $3,136,334 |
|  |  |  |  |  |  | $4,603,199 | $2,036,348 | $1,236,367 |  |

(1) Assumes NEZ for 10 years on residential portion, OPRA for 10 years on commercial portion.

(2) Includes anticipated expenditure plus contingency as stated in Brownfield Plan.

(3) Interest on balance due is calculated on an annual basis.

# 1540523

# EXHIBIT D

1879784.v1



## BROWNFIELD REIMBURSEMENT AGREEMENT

THIS BROWNFIELD REIMBURSEMENT AGREEMENT (the "Agreement"), is made on September 24, 2008, by and between the **CITY OF STURGIS BROWNFIELD REDEVELOPMENT AUTHORITY,** an authority established pursuant to Act 381 of the Public Acts of 1996, as amended ("Act 381"), with offices at 130 N. Nottawa, Sturgis, Michigan 49091 (the "Authority"); and **KIRSCH LOFTS LLC,** a Michigan limited liability company, whose address is C/O Auto Sports Unlimited, Inc., 200 N. Franklin, Suite 100, Zeeland, Michigan 49464 (the "Developer").

### RECITALS

A.      In accordance with Act 381, the Authority has adopted a Brownfield Plan that the City Commission for the City of Sturgis has approved (the "Plan").

B.      The Developer owns real property located at 308 North Prospect Street and 418 East Main Street (the "Property"), which is legally described on the attached Exhibit A.     The Property is included in the Plan as an Eligible Property because it is a Facility due to the presence of certain hazardous substances as described in the Plan.

C.      The Developer plans to redevelop the Property by renovating and rehabilitating existing buildings into a mixed-use development containing residential, retail, and commercial space (the "Project").  Act 381 permits the use of Tax Increment Revenues to reimburse a property owner or developer for the costs of Eligible Activities on Eligible Property.  Act 381 also permits the use of Tax Increment Revenues to reimburse the MDEQ and MEGA for the actual costs to review a Work Plan.

D.      In constructing the Project, the Developer will incur costs in connection with Eligible Activities as identified in the Plan—which include Baseline Environmental Assessment Activities, Due Care Activities, Eligible Activities permitted by Section (m)(iv) of Act 381, and developing and preparing the Plan and the Work Plan—all of which will require the services of various contractors, engineers, environmental consultants, attorneys and other professionals (the "Eligible Costs"). The Eligible Costs, including contingencies, are estimated to be $1,821,250. In addition, the MDEQ and MEGA will incur costs to review the Work Plan (the "Work Plan Costs"). The Work Plan Costs will be $2,000.

E.      In accordance with Act 381 and the Plan, the parties desire to use the Tax Increment Revenues generated from the Local Taxes and Taxes Levied For School Operating Purposes imposed on the Property to reimburse the Developer for the Eligible Costs (including interest) and the MDEQ and MEGA for the Work Plan Costs.

F.      The parties are entering into this Agreement to establish the procedure for using Tax Increment Revenues to reimburse Eligible Costs (including interest) and the Work Plan Costs.

## AGREEMENT

Accordingly, the parties agree as follows:

1.      <u>The Plan</u>

The Plan is attached as Exhibit B and incorporated into this Agreement.

2.      <u>Term of Agreement</u>

The Authority shall capture Tax Increment Revenues under the Plan from real and personal property taxes on the Property until the earlier of: (i) full reimbursement of the Work Plan Costs and the Developer's Eligible Costs (including interest) or (ii) 30 years after the date

2

the Authority begins capturing Tax Increment Revenues under the Plan. If this Agreement ends before the full reimbursement of all Work Plan Costs and the Developer's Eligible Costs (including interest), the last tax payment by the Authority shall be the summer and winter taxes distributed during the final year of this Agreement.

3.  Eligible Activities

The Developer will diligently pursue completion of the Eligible Activities set forth in the Plan. The parties recognize that before the date of this Agreement, Developer may have initiated Eligible Activities for which it may submit a Request for Cost Reimbursement for Eligible Activities according to paragraph 5 below. The Authority shall reimburse the Developer for Eligible Costs that were incurred before this Agreement if permitted under Act 381.

4.  Reimbursement Source

During the term of this Agreement, and except as set forth in paragraph 5 below, the Authority shall reimburse the Developer for its Eligible Costs (including interest) from the Tax Increment Revenues generated from Local Taxes and Taxes Levied For School Operating Purposes imposed on the Property and any personal property located on the Property.

5.  Reimbursement Process

(a)  On a quarterly basis, the Developer shall submit to the Authority a Request for Cost Reimbursement for Eligible Activities paid by the Developer during the prior period in the form attached as Exhibit C (the "Petition"). The Developer will identify on the Petition whether the Eligible Activities are: (1) Baseline Environmental Assessment Activities, (2) Due Care Activities, (3) Eligible Activities permitted by Section 2(m)(iv) of Act 381, or (4) developing and preparing the Plan and Work Plan. The Developer must also describe on the Petition each individual activity claimed as an Eligible Activity and the associated costs of each individual

3

activity.  The Developer will include with the Petition documentation sufficient to determine whether the costs incurred were for Eligible Activities, including proof of payment and detailed invoices.  A duly authorized representative of the Developer shall sign the Petition and swear to its accuracy in the presence of a notary.

(b)      The Authority shall review each Petition within 30 days after receiving it.  The Developer shall cooperate with the Authority's review by providing information and documentation to supplement the Petition as deemed reasonable and necessary by the Authority.  The Authority shall identify in writing to the Developer any costs deemed ineligible for reimbursement and the basis for the determination.  The Developer then has forty-five (45) days to provide supplemental information or documents to the Authority demonstrating that the costs are eligible for reimbursement.

(c)      Twice a year, after the summer and winter taxes are captured and collected on the Property, the Authority shall pay all Tax Increment Revenues to the Developer as reimbursement for approved Eligible Costs according to the Plan and this Agreement.

(d)      Interest at the rate identified in the Plan shall accrue on the balance of the Developer's unreimbursed Eligible Costs computed annually.  Interest shall begin to accrue on the date that the Developer incurs the Eligible Costs.

(e)      If there are insufficient funds available from Tax Increment Revenues captured under subparagraph (c) at any given time to pay all the Developer's unreimbursed Eligible Costs, the Authority is not required to reimburse the Developer from any other source.  The Authority shall, however, make additional reimbursement payments toward the Developer's remaining unreimbursed Eligible Costs according to this Agreement as Tax Increment Revenues become available under subparagraph (c).

4

(f)     The Authority shall reimburse the Developer for Eligible Costs under this section as follows:

Checks payable to:                      Kirsch Lofts LLC

Delivered to the following address:     C/O Auto Sports Unlimited, Inc.
                                        200 N. Franklin
                                        Suite 100
                                        Zeeland, Michigan 49464

                                        By first class mail.

6.    Legislative Authorization

      This Agreement is governed by and subject to the restrictions set forth in Act 381. If there is legislation enacted in the future that alters or affects the amount of Tax Increment Revenues subject to capture, Eligible Properties, or Eligible Activities, then the Developer's rights and the Authority's obligations under this Agreement may be modified accordingly by agreement of the parties.

7.    Plan Modification

      The parties may modify the Plan and this Agreement by mutual agreement to the extent allowed under Act 381.

8.    Notices

      All notices shall be given by registered or certified mail addressed to the parties at their respective addresses as shown above. Any party may change the address by written notice sent by registered or certified mail to the other party.

9.    Assignment

      The Developer may assign its interests under this Agreement upon at least thirty (30) days' prior written notice to the Authority.

10.    Entire Agreement

This Agreement supersedes all agreements previously made between the parties relating to the subject matter. There are no other understandings or agreements between them.

11.    Non-waiver

No delay or failure by any party to exercise any right under this Agreement, and no partial or single exercise of that right, constitutes a waiver of that or any other right, unless otherwise expressly provided herein.

12.    Headings

Headings in this Agreement are for convenience only and shall not be used to interpret or construe its provisions.

13.    Governing Law

This Agreement shall be construed in accordance with and governed by the laws of the State of Michigan.

14.    Counterparts

This Agreement may be executed in two or more counterparts, each of which shall be deemed an original but all of which together shall constitute one and the same instrument.

15.    Binding Effect

The provisions of this Agreement shall be binding upon and inure to the benefit of all of the parties and their respective heirs, legal representatives, successors, and assigns.

16.    Definitions

(a)    "Baseline Environmental Assessment Activities" is defined by Section 2(d) of Act 381.

(b)    "Brownfield Plan" is defined by Section 2(g) of Act 381.

(c)     "Due Care Activities" is defined by Section 2(k) of Act 381.

(d)     "Eligible Activities" is defined by Section 2(m) of Act 381.

(e)     "Eligible Property or Property" is defined by Section 2(n) of Act 381.

(f)     "Facility" is defined by Section 2(p) of Act 381.

(g)     "Local Taxes" is defined by Section 2(w) of Act 381.

(h)     "MDEQ" is defined as the Michigan Department of Environmental Quality.

(i)     "MEGA" is defined as the Michigan Economic Growth Authority or its designee.

(j)     "Tax Increment Revenues" is defined by Section 2(ee) of Act 381.

(k)     "Taxes Levied For School Operating Purposes" is defined by Section 2(gg) of Act 381.

(l)     "Work Plan" is defined by Section 2(hh) of Act 381.


[signature page to follow]

7

The parties have executed this Agreement on the date set forth above.

**CITY OF STURGIS BROWNFIELD
REDEVELOPMENT AUTHORITY**

By _____

Title _____

**KIRSCH LOFTS LLC**

By _____

Title _____

1578118-1

8

**Exhibit A**

Property Description

| | |
|---|---|
| Property Address: | 308 N. Prospect<br>Sturgis, Michigan |
| Tax Parcel Nos.: | 052-200-024-00 |

Legal Description:

BLK 55 EXCEPT W 131.33 FT LOT 9 & THAT PORTION OF 4TH T STREET VACATED N OF S LN LOT 15 BLK 6 ALSO LOTS 11, 14, 15, 16, BLK 6, DRAKES 2ND. CITY OF STURGIS, THIS PARCEL BEING LOCATED WEST OF N. PROSPECT STREET, 30.5 FT TH SELY 30 FT M/L TO PT ON W LN OF 4TH ST 12 FT S OF POB TH N ALG W LN OF ST 12 FT TO POB, BEING A TRIANG PAR OUT OF NE COR LOT 15, DRAKES 2ND ADD. CITY OF STURGIS.

| | |
|---|---|
| Property Address: | 415 E Main Street<br>Sturgis, Michigan |
| Tax Parcel Nos.: | 052-250-028-00 |

Legal Description:

LOTS 29 & 30 & 31 GREEN LAWN ADD. CITY OF STURGIS.

**Exhibit C**

Brownfield Request for Cost Reimbursement
For Eligible Activities

Date: _____

Listed below are total costs expended for each Eligible Activity category for the expenses being submitted with this request.  Attached is evidence of each cost item for each category including proof of payment and detailed invoices.

| | Eligible Activity Area | Eligible Cost |
|---|---|---|
| 1. | Phase I/Phase II/BEA | |
| 2. | Due care compliance | |
| 3. | Demolition, including lead and asbestos abatement | |
| 4. | Public infrastructure activities | |
| 5. | Brownfield plan/work plan preparation and agency review | |
| | Total Cost Reimbursement Request | |

I certify that the information submitted on and with this Request for Cost Reimbursement is accurate and is an eligible cost described in the amendment to the Brownfield Plan for this project approved by the City Commission of the City of Sturgis.

**Developer:** _____

**Signature:** _____

**Title:** _____

**Address:** _____

_____

_____

# EXHIBIT E

1879784.v1

# Michigan Economic Growth Authority (MEGA)
## Michigan Economic Development Corporation
## Brownfield Redevelopment MBT Credit Application – PART I

**ELIGIBLE INVESTMENT**

| | | |
|---|---|---|
| Will the project include an unknown lessee who will be making eligible investments? | ☐ Yes - If yes, please indicate the investment in the table below | ☒ No |

**MULTI-PHASE PROJECTS**

| | | |
|---|---|---|
| Is this a multi-phase project as defined in MCL 208.1437(10)? | ☒ Yes | ☐ No |

**Investment Details and MBT Credit Request** - *Note that Eligible investment does not include certain soft costs as determined by the MEGA under MCL 208.1437 (32)(D). Only investment made by qualified taxpayers or lessees is eligible for a credit. To the extent any investment is reimbursed or subsidized by another party, it will not qualify for a credit. If investment by a lessee is included in the project, the project will not be complete until that investment is finished. If the lessee's investment is not included in the project, the lessee will not be eligible for credit on any investment that they make.*

*To enter information in Excel, double click the table below:*

| Phase I Eligible Investments | | |
|---|---|---|
| A. Demolition of Buildings | | |
| B. Site Improvements | | |
| C. New Construction | | |
| D. Restoration, Alteration, Renovation & Improvement of Buildings | Kirsch Lofts LLC | $3,900,000 |
| E. Addition of Machinery, Equipment & Fixtures (include only the cost of new M&E and/or M&E purchased from a used equipment broker) | | |
|     Purchased Machinery & Equipment & Fixtures | | |
|     Leased Machinery & Equipment & Fixtures | | |
| **Phase I Eligible Investment Subtotal** | | **$3,900,000** |
| Phase II (for multi-phase projects only) | | |
| A. Demolition of Buildings | | |
| B. Site Improvements | | |
| C. New Construction | | |
| D. Restoration, Alteration, Renovation & Improvement of Buildings | Kirsch Lofts LLC | $1,800,000 |
| E. Addition of Machinery, Equipment & Fixtures (include only the cost of new M&E and/or M&E purchased from a used equipment broker) | | |
|     Purchased Machinery & Equipment & Fixtures | | |
|     Leased Machinery & Equipment & Fixtures | | |
| **Phase II Eligible Investment Subtotal** | | **$1,800,000** |
| Phase III (for multi-phase projects only) | | |
| A. Demolition of Buildings | | |
| B. Site Improvements | | |
| C. New Construction | | |
| D. Restoration, Alteration, Renovation & Improvement of Buildings | Kirsch Lofts LLC | $2,750,000 |
| E. Addition of Machinery, Equipment & Fixtures (include only the cost of new M&E and/or M&E purchased from a used equipment broker) | | |
|     Purchased Machinery & Equipment & Fixtures | | |
|     Leased Machinery & Equipment & Fixtures | | |
| **Phase III Eligible Investment Subtotal** | | **$2,750,000** |
| **TOTAL ELIGIBLE INVESTMENTS** | | **$8,450,000** |

| **MBT CREDIT REQUEST** | **Cannot exceed 12.5% of Total Eligible Investment, or 20% for MEGA designated Urban Development Area Project (see Pg6)** | **$1,690,000** |
|---|---|---|

| | | |
|---|---|---|
| **Other Private Sector Contributions** - Other than the investment identified in the Eligible Investment section, will there be any other private sector contribution to the project? | ☒ No | ☐ Yes – Please describe below |

**Government Assistance or Special Designation** - List the type and dollar amount of any local, state or federal incentives associated with this project, including grants, loans, tax abatements and tax increment financing.

A request is being submitted for a Neighborhood Enterprise Zone designation. Additionally, brownfield TIF is being requested to assist with the extensive ($1.5 million) demolition and lead and asbestos abatement costs as well as BEA and due care costs.

# EXHIBIT F

1879784.v1



**MICHIGAN ECONOMIC DEVELOPMENT CORPORATION**

October 10, 2008

300 N. WASHINGTON SQ.
LANSING, MI 48913
CUSTOMER
ASSISTANCE CENTER
517 373 9808
WWW.THEMEDC.ORG

Mr. Scott Bosgraaf
Member
Kirsch Lofts, LLC
200 N. Franklin; Suite 100
Zeeland, Michigan 49464

Dear Mr. Bosgraaf:

The Brownfield Redevelopment Credit Project Pre-approval Application that was submitted for the project located at 308 N. Prospect Street and 415 E. Main Street (Parcel numbers: 052-200-024-00 and 052-250-028-00), Sturgis, Michigan, has been approved as described in the application dated October 1, 2008. The project number #S08-0025 has been assigned and should be referenced in all future correspondence regarding this brownfield credit. Based on information provided on the application, the taxpayer listed below is a qualified taxpayer under Public Act 36 of 2007, 208.1437(32)(I) as amended.

EXECUTIVE COMMITTEE
MATTHEW P. CULLEN
  Chair
  Rock Enterprises

PHILIP H. POWER
  Vice-Chair
  The Center for Michigan

JAMES C. EPOLITO
  President and CEO

RICHARD E. BLOUSE JR., CCE
  Detroit Regional Chamber
JOHN W. BROWN
  Stryker Corporation
DR. DAVID E. COLE
  Center for
  Automotive Research
KEITH W. COOLEY
  Michigan Department of
  Labor & Economic Growth
JOANN CRARY
  Saginaw Future Inc.
DR. HAIFA FAKHOURI
  Arab American and
  Chaldean Council
STEVEN K. HAMP
  Hamp Advisors, LLC
PAUL HILLEGONDS
  DTE Energy Company
FREDERICK W. HOFFMAN
  Chrysler, LLC
GEORGE W. JACKSON JR.
  Detroit Economic
  Growth Corporation
MICHAEL J. JANDERNOA
  Bridge Street Capital
  Partners, LLC
BIRGIT M. KLOHS
  The Right Place, Inc.
F. THOMAS LEWAND
  Bodman LLP
DR. IRVIN D. REID
  Wayne State University
MICHAEL B. STAEBLER
  Pepper Hamilton LLP
DENNIS R. TOFFOLO
  Oakland County
PETER S. WALTERS
  Guardian Industries Corp.
TODD A. WYETT
  Versa Development, LLC

**Kirsch Lofts LLC**                                      **EIN #: 26-2865985**

| | |
|---|---|
| Percentage of eligible investment used to determine the credit: | 20% |
| Maximum total eligible investment for the project: | $8,450,000 |
| Maximum total of all credits for the completed project: | $1,690,000 |

In order for Eligible Investment to qualify for the credit it must occur after September 24, 2008, the date of approval of the Brownfield Plan by the City of Sturgis. In addition, the project must be completed not more than ten (10) years from the date of this letter.

In order for a project to be considered complete, the qualified taxpayer must complete the project as described in their Brownfield MBT Pre-Approval Application. In addition, a valid Certificate of Occupancy (if applicable) must be issued by local authorities for the project.

After completion of the project, the credit will be calculated based on documented eligible investment made by the qualified taxpayer listed above. Any investment made by an entity that is not the qualified taxpayer listed above is not eligible for tax credits. It is strongly advised that detailed records are maintained for all investment related to this project, including, but not limited to, invoices, contracts, purchase orders and payments.

If any material or substantial change to the project occurs after the date of this letter, an approval must be obtained from the Chairperson of the Michigan Economic Growth Authority or his designee by filing a request to amend the Brownfield Redevelopment MBT Credit Application. Any material or substantial change may include, but is not limited to, a change in the project described in the application; a change in project size and/or scope; a change in land use and/or project mix; square footage; project costs; or changes in the qualified taxpayer investment in the project. Finally, any approvals to amend the project must be obtained prior to completion of the project.

Small Pre-Approval Letter
Kirsch Lofts LLC
October 10, 2008
Page 2 of 2

There will be an administrative fee that is 1.4 percent (1.4%) of the face value of the credit, minus the $5,000 paid application fee, which will be due when the Certificate of Completion for the project is requested. For this project, the balance due is **$18,660.00**. Checks should be made payable to the **Michigan Strategic Fund**.

If investment by an unknown lessee was included in the application, this lessee must be identified when the Certificate of Completion is requested. The lessee must be certified as a qualified taxpayer at that time.

With the status of the project changing to a multiphase project, MCL Section 208.1437(10) requires that if all components of a multiphase project are not completed, then Kirsch Lofts LLC shall pay to the state treasurer, as a penalty, an amount equal to all the credits claimed and assigned for all components of the project. The penalty also includes interest from the date the credit was claimed or assigned.

A Michigan Business Tax Brownfield Redevelopment Credit may not be taken until after a Certificate of Completion has been requested and issued.

If you have any questions regarding this matter please contact Mr. Joe Agostinelli at 517-241-7643.

Sincerely,

James C. Epolito, Chairperson
Michigan Economic Growth Authority

cc: Michigan Department of Treasury – MBT Division
John Byl, Warner Norcross & Judd
John Hayes, Economic Development Director, City of Sturgis

# EXHIBIT G

1879784.v1



517.482.8555
Phone
517.482.8598
Fax
jhorner@capfund.net
www.capfund.net

Mr. Scott Bosgraaf
Bosgraaf Commercial, LLC
200 North Franklin
Zeeland, MI 49464

RE:    Kirsch Lofts & Kirsch Industrial Project

Dear Scott,

CapFund New Markets, LLC was created several years ago by the Great Lakes Capital Fund as a means to bring new community development financing to low income communities in the Great Lakes region. In addition to community development finance, the Great Lakes Capital Fund has raised over $1.6 billion in equity to finance the construction of affordable housing, provided over $50 million in predevelopment loans and grants, over $25 million in permanent lending to affordable multi-family developments and small businesses, and acted as an advocate for residents of low income communities throughout the region. Recently we were successful in obtaining a $28 million allocation of Federal New Markets Tax Credits (NMTC's) from the Community Development Financial Institutions Fund, a division of the Federal Department of Treasury.  Using this resource, we are committing up to $10.8 million of our Round 7 NMTC allocation to the Kirsch Lofts & Industrial Project based upon the information you have provided us.  This commitment will expire on July 31st 2010, unless a subsequent extension is granted.

## Terms

**Allocation Amount:**     $10,800,000 ("QEI") from our Round 7 allocation of $28 million awarded in 2009.

**Fees**

    Upfront CDE Fee:    CapFund New Markets, LLC will charge a 5.0% fee at the time of closing (2.0% from the Investment Fund and 3.0% from the QEI) applied to the total NMTC allocation invested.  This equates to a total of $540,000.

    Annual CDE Asset
    Management Fee:    The CDE will receive a 50 basis point annual asset management fee (applied to the invested NMTC allocation) for each of the 7 years during the compliance period. The asset management fee will be paid by the QALICB quarterly in arrears. This equates to ($54,000) per year for each of the 7 years, with the first and final years pro-rated. The asset management fees shall be reserved as set forth in this paragraph. At closing, a new separate account will be established solely for the purpose of reserving the asset management fee for CapFund New Markets, LLC This account shall be pledged solely to CapFund New Markets,

LLC to secure the payment of the asset management fee. At closing, the first year's asset management fee ($54,000) shall be deposited in the account. In addition, on the first anniversary of closing, the remaining 6 years of asset management fee ($324,000) shall be deposited in the account. The obligation to deposit all amounts into the separate account shall be guaranteed by guarantors acceptable to CapFund New Markets, LLC in its sole discretion.

**NMTC Residual Repayment:**

The project will provide to CapFund New Markets a "Residual Repayment" of 2.0% of the QEI amount at the end of the 7 year compliance period which will be outside of the NMTC structure estimated to be $216,000. The Residual Repayment will be dedicated to fund a revolving loan fund used to bridge community development financing incentives in rural communities.

**Initial Deposit:**

CapFund New Markets, LLC requires the QALICB to deposit $30,000, upon execution of this term sheet. Should the project fail to close by the Closing Date as evidenced by the signing of final documents, funding of the QEI, and the closing draw: (a) $10,000 of the deposit may be retained by CapFund New Markets, LLC as consideration for our reservation and due diligence costs (e.g. site visit, project review, etc.); and (b) the remaining $20,000 will be applied toward the legal and third-party closing expenses incurred by CapFund New Markets, LLC with any excess funds to be returned to QALICB. If CapFund New Markets, LLC incurs any legal expenses in excess of $20,000, Borrower shall be obligated to reimburse CapFund New Markets, LLC for those additional expenses.

**Project Reserves:**

Reasonable reserves may be required based upon final underwriting of the Project.

**Transaction Expenses:**

The QALICB shall pay all transaction expenses, including legal costs of CapFund New Markets, LLC The parties acknowledge that we will seek to close the transaction by July 31st, 2010. If this NMTC transaction does not close by July 31st, 2010 (the "Closing Date") CapFund New Markets shall no longer be obligated to commit its allocation to this transaction. At its discretion, CapFund New Markets may provide an extension; an additional deposit, beyond the Initial Deposit below, may be required depending on the legal costs accrued by that date. Should CapFund New Markets legal counsel be requested to draft any of the transaction documents, rather than review documents prepared by other parties, the legal costs will be paid separately by QALICB and not billed through nor considered part of CapFund New Market's legal expenses.

**One-day Loan Expenses:**

If a one-day loan is needed for this transaction, the QALICB shall pay the one-day loan interest and fee expenses.

**Sub CDE Expenses:** The QALICB will be responsible for covering the annual audit, tax preparation costs, accounting, AUPs, CDE certifications, and any federal, state or local business taxes. If no semi-annual third party certifications are required by the investor then there shall be no need for that service or the cost associated with that service. Should it be required it will be a cost covered by the QALICB. The annual SUB-CDE Expense reimbursement available shall be capped at $20,000 with 4% annual compounded escalation adjustment available to cover costs, if necessary. If the interest rate on the QLICI increases or if investor makes other requirements on third-party needs for the SUB-CDE (e.g. third-party CDE Certification, etc.), CapFund New Markets, LLC has the right to adjust this cap prior to investment closing.

**Loan Servicing:** CapFund New Markets, LLC shall undertake the loan servicing of its allocation and the allocation of all other CDEs involved in this transaction at the agreed upon price of 11 basis points annually paid by the borrower per the terms of the QLICI loan agreement.

**Required Guarantees:** The QALICB and its principals will provide the customary real estate guarantees expected by NMTC investors, lenders, and CDE's, including but not limited to, construction guarantees, compliance guarantees, completion guarantees, environmental guarantees, and repayment guarantees. In addition, the QALICB and its principals will provide a guarantee to the investor and CapFund New Markets, LLC against any recapture of NMTC's due to loss of QALICB status and against any and all losses resulting from the negligence, recklessness or willful misconduct of the QALICB (or any affiliate thereof).

**Collaborative Publicity:** CapFund New Markets, LLC routinely creates press releases for each project in which we participate. QALICB permits CapFund New Markets, LLC to draft, reproduce and distribute publicity information about the project. QALICB shall similarly share financing-related press releases about the NMTC investment and incorporate CapFund New Markets, LLC feedback. Only approved quotes will be used by the parties and the parties will work collaboratively to get feedback from one another and be inclusive within their public relations outreach. No confidential information will be disclosed. Information contained in CapFund New Markets, LLC press releases typically includes: location, size and scope of the project, key stakeholders, and the anticipated and actual economic, social and environmental impacts of the project. It also lists funding sources and amounts, as well as the name of the various funders. The QALICB will also notify CapFund New Markets, LLC of any planned ground breaking or press conferences when such dates are first known and seek to be inclusive of CapFund New Markets, LLC along with all other funders.

**CDFI Reporting:** QALICB commits to working with CapFund New Markets, LLC with respect to CDFI reporting requirements, and as such, shall identify a Project Manager

whose responsibility shall be, on an as-needed basis, to gather and provide all data required to comply with CDFI Fund reporting requirements, including compliance, reporting and transactional level data needed to qualify and maintain QALICB compliance under the Community Investment Intelligence System (CIIS). CapFund New Markets, LLC, the QALICB, and the Investor commit to work collaboratively to collect all CIIS reporting data and loan structure information *prior to the close*; any information that cannot be collected prior to the close shall be jointly collected and confirmed within three weeks following the close.

**CapFund New Markets Community Impact Requirements:**

The QALICB and CapFund New Markets, LLC shall also commit to work cooperatively in terms of identifying and implementing additional measures which may enhance the community and sustainability impacts of the project.

**Community, Economic/Fiscal and Environmental Impact Report:**

The QALICB agrees to provide to CapFund New Markets, LLC A community impact report prepared by a reputable firm acceptable to CapFund New Markets on or before the closing date.

We very much look forward to working with you on this important and impactful project.

Sincerely,

Mark McDaniel
President
CapFund New Markets
1000 S. Washington, Suite 200
Lansing, MI 48910

[SIGNATURE PAGE FOLLOWS]

# EXHIBIT H

1879784.v1



## CORE COMMUNITIES

In June of 2000, the State of Michigan initiated an effort to spur private development in its urban communities and traditional centers of commerce. The incentives, unique to Core Communities, target critical needs of older communities through new housing development, redevelopment of obsolete facilities and development of contaminated properties.

The Core Communities designation provides the community with three economic development tools:

### BROWNFIELD REDEVELOPMENT INCENTIVES

Core Communities have the ability to use brownfield tools not only on contaminated property, but blighted and functionally obsolete sites as well. In addition, the tax increment financing component can pay for demolition, site preparation, public infrastructure and lead and asbestos abatement, as well as environmental remediation.

### NEIGHBORHOOD ENTERPRISE ZONES

This program provides property tax incentives for new home construction and home rehabilitation. For new home construction, instead of the full millage rate, the new home is taxed at half of the statewide average. For rehabilitation projects, the assessment is frozen at preimprovement levels. Each of these abatements can be approved for six to 15 years. Land is not abated.

### OBSOLETE PROPERTY REHABILITATION EXEMPTION

Available only in Core Communities, this incentive is designed to assist in the redevelopment of contaminated, blighted and functionally obsolete properties. The goal is to convert these underutilized buildings into vibrant commercial and/or commercial housing opportunities. The incentive offers the community the ability to freeze local property taxes at the pre-development level for up to 12 years. The developer can also apply to the State Treasurer to freeze half of the state education millage for up to six years. Land is not abated.

### CONTACT INFORMATION

For more information on Core Communities and the unique incentives available in those areas, contact the Michigan Economic Development Corporation[SM] Customer Contact Center at 517.373.9808.

---

### OBSOLETE PROPERTY REHABILITATION ACT (OPRA) PA 146 OF 2000, AS AMENDED QUALIFIED LOCAL GOVERNMENTAL UNITS

Section 2(k) of the act gives the qualifications which must be met in order for a local unit to be a qualified local governmental unit. There are separate qualifications for cities, townships and villages.

#### TOWNSHIPS

| | |
|---|---|
| Benton Charter Twp. | Berrien County |
| Buena Vista Charter Twp. | Saginaw County |
| Genesee Twp. | Genesee County |
| Leoni Twp. | Jackson County |
| Mt. Morris Charter Twp. | Genesee County |
| Redford Charter Twp. | Wayne County |
| Royal Oak Charter Twp. | Oakland County |

#### VILLAGES

| | |
|---|---|
| Baldwin | Lake County |

*Cities listed on the next page*

**michiganbusiness.org**



## QUALIFIED LOCAL GOVERNMENTAL UNITS (CONTINUED)

### CITIES

| | | | |
|---|---|---|---|
| Adrian | Dowagiac | Ionia | Norton Shores | Vassar |
| Albion | Durand | Iron Mountain | Norway | Wakefield |
| Allegan | East Lansing | Iron River | Oak Park | Warren |
| Alma | Eastpointe | Ironwood | Olivet | Wayne |
| Alpena | Ecorse | Ishpeming | Omer | West Branch |
| Ann Arbor | Escanaba | Ithaca | Onaway | White Cloud |
| Bad Axe | Ferndale | Jackson | Owosso | Wyandotte |
| Bangor | Flint | Kalamazoo | Petoskey | Wyoming |
| Battle Creek | Frankfort | Lake City | Pinconning | Ypsilanti |
| Bay City | Gaastra | Lansing | Pontiac | |
| Benton Harbor | Gaylord | Lapeer | Port Huron | |
| Bessemer | Gibraltar | Lincoln Park | Portage | |
| Big Rapids | Gladstone | Livonia | Reading | |
| Bronson | Gladwin | Ludington | Reed City | |
| Buchanan | Grand Haven | Madison Heights | River Rouge | |
| Burton | Grand Rapids | Manistee | Rogers City | |
| Cadillac | Grayling | Manistique | Saginaw | |
| Caro | Hamtramck | Marine City | St. Ignace | |
| Carson City | Harbor Beach | Marquette | St. Johns | |
| Caspian | Harper Woods | Marshall | St. Joseph | |
| Center Line | Harrison | Mason | St. Louis | |
| Charlevoix | Harrisville | Melvindale | Sandusky | |
| Charlotte | Hart | Menominee | Sault Ste. Marie | |
| Cheboygan | Hartford | Midland | Southfield | |
| Coldwater | Hastings | Monroe | Standish | |
| Coleman | Hazel Park | Mt. Clemens | Stanton | |
| Corunna | Highland Park | Mt. Morris | Sturgis | |
| Crystal Falls | Hillsdale | Mt. Pleasant | Tawas City | |
| Dearborn | Holland | Munising | Taylor | |
| Dearborn Heights | Houghton | Muskegon | Three Rivers | |
| Detroit | Howell | Muskegon Hts. | Trenton | |
| | Inkster | Niles | Traverse City | |

**144 Total Qualifying Communities**

*Adopted by the State Tax Commission at its April 8, 2014 meeting.*

**michiganbusiness.org**

©2015 Michigan Economic Development Corporation™